1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10

11    SALTAN ZAGSAW,              No.  1:15-cv-00793-LJO-SKO  HC

12            Petitioner,

13       v.                  **FINDINGS AND RECOMMENDATION**
                                  **THAT COURT DISMISS PETITION FOR**
14    CLARK DUCART, Warden, Pelican Bay    **WRIT OF HABEAS CORPUS**
     State Prison, and SCOTT KERNAN,
15    Secretary of CDCR,

16           Respondents.             **(Doc. 16)**

17

18         Petitioner, a state prisoner proceeding *pro se* with a petition for writ of habeas corpus

19 pursuant to 28 U.S.C. § 2254, seeks to set aside his validation as a prison gang member and

20 confinement in a security housing unit ("SHU").  Respondents move to dismiss the petition,

21 contending that Petitioner's grounds for relief are not cognizable under the Antiterrorism and

22 Effective Death Penalty Act of 1996 ("AEDPA").  The Court referred the matter to the Magistrate

23 Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 and 304.  The Magistrate Judge

24 now issues the following findings and recommends that the Court dismiss the petition.

25

26 **I.**      <u>**Procedural and Factual Background**</u>

27         Petitioner entered the custody of the California Department of Corrections and

28 Rehabilitation ("CDCR") at the California Medical Facility on December 23, 2009, following his

conviction in Fresno County of carrying a loaded firearm and discharging a loaded firearm from a motor vehicle at a person.  Petitioner, who was a member of a North Hispanic street gang, had multiple prior offenses.

On July 15, 2010, Petitioner arrived at Kern Valley State Prison as an "adverse transfer." He was assigned to the administrative segregation unit ("ASU") pending administrative review and availability of a bed.

On November 15, 2010, the CDCR issued to Petitioner a "Confidential Information Disclosure Form" reporting that on October 13, 2010, a confidential informant had identified Petitioner as having participated in a Northern Structure prison gang exercise program called the "Red Machine" in the ASU of the California Medical Facility.  The informant was considered reliable based on his previously having provided truthful information and based on the fact that the informant incriminated himself in making the disclosure.  As a result, Petitioner was placed in the ASU.

On May 2, 2011, the classification committee validated Petitioner as a member of the Northern Structure prison gang based on the confidential informant report; an April 8, 2010, rules violation report and two supporting documents associated with it; and Petitioner's tattoos and symbols.

Petitioner challenged his detention in the ASU and pursued his administrative remedies through the Director's level.  On July 11, 2011, the appeals examiner denied Petitioner's appeal, finding that Petitioner was appropriately placed in the ASU pending the outcome of the gang validation process.

On October 15, 2012, the Kings County Superior Court denied Petitioner's petition for writ of habeas corpus.  Opining that "[t]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board" (Doc. 1 at 50), the Court

2

declined to conduct an independent assessment of the credibility of the source information used to validate Petitioner as a prison gang member.

On March 21, 2013, the California Court of Appeal denied the petition without prejudice, finding that Petitioner had not exhausted his administrative remedies as to the gang validation even though they had been exhausted as to his retention in the ASU.

In a 180-day custody review on April 1, 2014, the committee retained Petitioner in the SHU based on his security threat group ("STG") validation.  On April 13, 2014, Petitioner sought administrative review.  His classification appeal was initially rejected at the first level for having been brought after expiration of the time period for appealing the validation.  Petitioner then pursued an administrative appeal of the 180-day custody review through all levels.  His claims were rejected as having insufficient factual and evidentiary support, and his retention in the SHU was found to be appropriate.

On April 6, 2015, the Kings County Superior Court affirmed CDCR's custody classification of Petitioner as supported by the evidence.

On May 26, 2015, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1]

**II.**   **Standard of Review**

A person in custody as a result of the judgment of a state court may secure relief through a petition for habeas corpus if the custody violates the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 (2000).  On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed thereafter.  *Lindh v.*

///

---

[1] In lieu of completing a federal form for writ of habeas corpus, Petitioner filed a copy of the state petition filed in Kings County Superior Court.

3

*Murphy*, 521 U.S. 320, 322-23 (1997).  Under the statutory terms, the petition in this case is governed by AEDPA's provisions because Petitioner filed it after April 24, 1996.

Habeas corpus is neither a substitute for a direct appeal nor a device for federal review of the merits of a guilty verdict rendered in state court.  *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring).  Habeas corpus relief is intended to address only "extreme malfunctions" in state criminal justice proceedings.  *Id.*  Under AEDPA, a petitioner can prevail only if he can show that the state court's adjudication of his claim:`

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003); *Williams*, 529 U.S. at 413.

"By its terms, § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions set forth in §§ 2254(d)(1) and (d)(2)."  *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

As a threshold matter, a federal court must first determine what constitutes "clearly established Federal law, as determined by the Supreme Court of the United States."  *Lockyer*, 538 U.S. at 71.  The court must look to the holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state-court decision.  *Id.*  The court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law."  *Id.* at 72.  The state court need not have cited clearly established Supreme Court precedent; it is sufficient that neither the reasoning nor the result of the state court contradicts it.  *Early v. Packer*, 537 U.S. 3, 8 (2002).  The federal court must apply the presumption that state courts know and follow the law.  *Woodford v. Visciotti*,

1    537 U.S. 19, 24 (2002).  The petitioner has the burden of establishing that the decision of the

2    state court is contrary to, or involved an unreasonable application of, United States Supreme

3    Court precedent.  *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).

4          "A federal habeas court may not issue the writ simply because the court concludes in its

5    independent judgment that the relevant state-court decision applied clearly established federal law

6    erroneously or incorrectly."  *Lockyer*, 538 U.S. at 75-76.  "A state court's determination that a

7    claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on

8    the correctness of the state court's decision."  *Harrington*, 562 U.S. at 101 (quoting *Yarborough v.*

9    *Alvarado*, 541 U.S. 652, 664 (2004)).  Thus, the AEDPA standard is difficult to satisfy since even

10   a strong case for relief does not demonstrate that the state court's determination was unreasonable.

11   *Harrington*, 562 U.S. at 102.

12   **III.    Petitioner's Validation**

13         Petitioner contends that because Petitioner's gang validation violated the federal

14   constitution and "criminal/court proceedings," his validation must be set aside.[2]  His

15   memorandum of law contends that Petitioner is irrationally being punished merely for

16   participating in an exercise group and that he was validated solely on the unfounded report of a

17   confidential informant.  Respondents disagree and contend that because validation is a matter of

18   state law, this claim must be dismissed for lack of jurisdiction.  The undersigned agrees with

19   Respondents.

20         Petitioner bears the burden of alleging specific facts showing that a federal right is

21   involved.  *Blackledge v. Allison*, 431 U.S. 63, 75 n. 7 (1977).  In this claim, Petitioner merely

---

[2] Petitioner was validated as a member of the Northern Structure on May 2, 2011, but he did not file the federal petition challenging the validation until May 26, 2015.  Previously, on March 21, 2013, the California Court of Appeal declined to consider Petitioner's validation claim as out of time.  Respondents do not raise a limitations issue.  Because the undersigned recommends that the Court dismiss the petition for lack of jurisdiction over state law determinations, it need not reach the question of the timeliness of this claim.

challenges the sufficiency of the evidence to satisfy California's validation requirements.  His

arguments regarding the sufficiency of the confidential informant's information that he

participated in Northern Structure recreational activities are not sufficient to bring this claim

within federal court jurisdiction.

"It is not the province of a federal court to reexamine state court determinations of state

law questions." *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991).  As discussed above, AEDPA

imposes "a highly deferential standard for evaluating state-court rulings," requiring "that state-

court decisions be given the benefit of the doubt." *Woodford*, 537 U.S. at 24 (quoting *Lindh*, 521

U.S. at 333 n. 7).

Validation of an inmate as a member of a security threat group is a process governed by

California state law.[3]  A security threat group (STG) is an "ongoing formal or informal

organization, association, or group of three or more persons which has a common name or

identifying sign or symbol whose members and/or associates, individually or collectively, engage

or have engaged, on behalf of that organization, association, or group, in two or more acts which

include[] planning, organizing, threatening, financing, soliciting or committing unlawful acts, or

acts of misconduct."  Cal. Code Regs. Tit. 15, § 3000.  Validation is the formal and objective

process for identifying and documenting STG affiliates in California state prisons.  Cal. Code

Regs. Tit. 15, §§ 3000; 3378.2.  Source items for validation may include symbols distinctive to

specific STGs, association, informants, debriefing reports, written materials, photographs, staff

information, other agency information, visitors, communication, self-admission, offenses, tattoos

or other body markings, and legal documents.  Cal. Code Regs. Tit. 15, § 3378.2.  Each category

---

[3] In preparing his memorandum of law, Petitioner has confused California law governing validation of inmates as members and associates of security threat groups with the statute providing for enhanced sentences in crimes committed for the benefit of street gangs (California Penal Code § 186.22).  The sentencing law applicable to crimes by street gang members is not applicable to the institutional process of validating inmates (who have already been convicted and sentenced to prison) as STG members and associates.

of source item is assigned a points value by which it is weighted to permit an objective assessment in the validation process.  Cal. Code Regs. Tit. 15, § 3378.2.

Here, Petitioner's validation was predicated on (1) the confidential informant's report that Petitioner was participating in an exercise group consisting of Northern Structure members and affiliates as well as (2) the disciplinary action that resulted in Petitioner's adverse transfer to Kern Valley State Prison, (3 and 4) two documents supporting the disciplinary action, and (5) Petitioner's tattoos and other indicia of gang membership.  Accordingly, Petitioner's claim that he was improperly validated as a member of a STG is not cognizable in a federal habeas petition.[4]

## IV.   **Inability to Earn Custody Credits**

Because Petitioner is unable to earn custody credits while he is housed in the SHU, he argues that eight years have been added to his sentence.  Respondents counter that "[Petitioner] became ineligible to earn custody credit as a result of his prison gang activity and subsequent placement in the security housing unit. (Cal. Penal Code § 2933.6.)"  Doc. 16 at 6.  Petitioner has not been deprived of any custody credits accumulated before his validation, however; he has only been deprived of the right to earn additional credits so long as he is confined in the SHU as a validated member of an STG.

In California, "[i]t is the intent of the Legislature that persons convicted of a crime and sentenced to state prison . . . serve the entire sentence imposed by the court."  California Penal Code § 2933(a).  "Credit is a privilege, not a right."  California Penal Code § 2933(c).  An inmate who is confined in the SHU upon validation as a prison gang member or associate is ineligible to earn custody credits during the time he remains in the SHU.  California Penal Code § 2933.6(a).

Similarly, under established federal law, "[t]here is no constitutional or inherent right of a

---

[4] Because this Court lacks jurisdiction to review the California validation process, it should not address Petitioner's claims that exercising with the Northern Structure prison gang was not sufficient to constitute a direct link under California law and that the validation process failed to conduct an individual assessment of Petitioner's dangerousness.

convicted person to be conditionally released before the expiration of a valid sentence."
*Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1979).
"[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his
liberty to the extent that the state may confine him and subject him to the rules of its prison
system so long as the conditions of confinement do not otherwise violate the Constitution."
*Meachum v. Fano*, 427 U.S. 215, 224 (1976).  The Constitution "itself does not guarantee good
time credit for satisfactory behavior while in prison."  *Wolff v. McDonnell*, 418 U.S. 539, 557
(1974).

In the absence of established federal law creating a right to shorten one's sentence by
accumulating good time or custody credits, the determination of Petitioner's right to continue to
earn custody credits in the SHU following STG validation is a question of state law and is not a
cognizable federal habeas claim.  *See Estelle*, 502 U.S. at 71-72.  The Court lacks jurisdiction to
consider Petitioner's claim that he is unable to earn custody credits.

**V.     Release From the SHU**

Petitioner also contends that committee performing his 18-month SHU custody review
failed to perform an individual assessment of the extent of his threat to institutional safety and
security.  Petitioner contends that such an individual assessment would have established that he
did not constitute a threat and resulted in his release from the SHU.  This claim is not within the
Court's federal habeas jurisdiction.

"Federal courts do not sit to supervise state prisons, the administration of which is acute
interest to the States."  *Meachum*, 427 U.S. at 229.  "It is difficult to imagine an activity in which
a State has a stronger interest, or one that is more intricately bound up with state laws,
regulations, and procedures, than the administration of its prisons.  *Preiser v. Rodriguez*, 411 U.S.
475, 491-92 (1973).  "Discipline by prison officials in response to a wide range of misconduct

1
2
falls within the expected perimeters of the sentence imposed by a court of law." *Sandin v. Conner*, 515 U.S. 472, 485 (1995).

3
4
5
6
7
8
9
10
An inmate does not have a liberty interest in remaining free of disciplinary segregation. *Id. See also Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement"); *Hewitt v. Helms*, 459 U.S. 460, 467 (1982), *overruled in part on other grounds by Sandin*, 515 U.S. 472 ("[P]rison officials have broad administrative and discretionary authority over the institutions they manage and . . . lawfully incarcerated persons retain only a narrow range of protected liberty interests"). The Court lacks jurisdiction to address this issue.

11
## VI.    Cruel and Unusual Punishment

12
13
14
15
Finally, Petitioner contends that confining him in the SHU for the simple act of exercising constitutes cruel and unusual punishment in violation of the Eighth Amendment to the Constitution.  His argument lacks merit.

16
17
18
19
20
21
"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const., amend. VIII.  Courts determine whether punishment is cruel or unusual by looking beyond historical conceptions to "the evolving standards of decency that mark the progress of a maturing society."  *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)).

22
23
24
25
26
27
28
Whether a sentence violates the Eighth Amendment's prohibition of cruel and unusual punishment requires the court to determine whether the term is grossly disproportionate to the offense. *Lockyer*, 538 U.S. at 72.  What constitutes a grossly disproportionate sentence is unclear. *Id.* "[T]he only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." *Id.* at 73.  Successful

challenges based on disproportionality are "exceedingly rare." *Solem v. Helm*, 463 U.S. 277, 289-90 (1983).

Petitioner seeks to prove this contention by summarizing the statutory ranges of punishments for a variety of criminal offenses and then comparing them to an eight-year sentence for exercising. Petitioner calculates his "eight-year sentence" increase based on the custody credits he could have accumulated if he had not been validated and confined in the SHU.

The Court should not entertain this fanciful argument. Petitioner is not confined to the SHU because he exercised; he is confined to the SHU because he associated with the Northern Structure prison gang, a security threat group. As a result of this activity and other indicia of Northern Structure membership, he became a validated member of an STG group and was confined to the SHU under applicable California regulatory provisions. The Court should not permit Petitioner to circumvent the federal barrier to habeas relief for state determinations of state law provisions by recharacterizing his prison gang validation as a disciplinary penalty for exercising.

## VII.   Certificate of Appealability

A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, but may only appeal in certain circumstances. *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.

> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.

10

(c)     (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—

(A)  the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

(B)  the final order in a proceeding under section 2255.

(2)  A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3)  The certificate of appealability under paragraph (1) shall indicate which specific issues or issues satisfy the showing required by paragraph (2).

If a court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Although the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 537 U.S. at 338.

Reasonable jurists would not find the Court's determination that it lacks jurisdiction to address the petition to be debatable, wrong, or deserving of encouragement to proceed further. Accordingly, the Court should decline to issue a certificate of appealability.

## VIII.   Conclusion and Recommendation

The undersigned recommends that the Court dismiss the Petition for writ of habeas corpus with prejudice and decline to issue a certificate of appealability.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C § 636(b)(1).  Within **thirty**

11

**(30) days** after being served with these Findings and Recommendations, either party may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections, if any, shall be served and filed within **fourteen (14) days** after service of the objections.  The parties are advised that failure to file objections within the specified time may constitute waiver of the right to appeal the District Court's order.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 ((9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __June 6, 2016__                    _____/s/ *Sheila K. Oberto*_____
                                                       UNITED STATES MAGISTRATE JUDGE

12